**BAYRAMOGLU LAW OFFICES LLC**
David Silver (California Bar No. 312445)
david@bayramoglu-legal.com
1540 West Warm Springs Road, Ste. 100
Henderson, NV 89014
Tel: (702) 462-5973
Fax: (702) 553-3404
*Attorneys for Plaintiffs*

## IN THE UNTIED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| iBeauty Limited Company, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Dbest Products, Inc., <br><br> Defendant. | **CASE NO. 2:24-cv-10694-MWC-JC** <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STRIKE AND/OR DISMISS THE FIRST AMENDED COMPLAINT** |

Plaintiffs iBeauty Limited Company, Dongguan Xianghuo Trading Co., Ltd., Dongguan Laiyang Trading Co., Ltd., Guangzhou Linyu Trading Co., Ltd., Guangzhou Lincan Electronic Technology Co., Ltd and Guangzhou Senran Electronic Technology Co., Ltd. (collectively, "Plaintiffs"), hereby submits its response and opposition to Defendant dbest products, Inc. ("Defendant")'s Motion to Strike and/or Dismiss the First Amended Complaint (the "Motion"). Plaintiffs also hereby request Defendant be ordered to pay Plaintiffs' costs and fees for having to respond to the unnecessary motion and/or the setting of an additional briefing schedule for Plaintiffs' to bring a motion for sanctions under Fed. R. Civ. P. Rule 11. Alternatively, Plaintiffs' request the Court to exercise its discretion to award sanctions for the filing of the frivolous motion under L.R. 11-9 and L.R. 83-7.

1

## **TABLE OF CONTENTS**

PRELIMINARY MATTER .......................................................................................... 1

FACTUAL CORRECTIONS ...................................................................................... 2

BACKGROUND FACTS .......................................................................................... 7

ARGUMENT ............................................................................................................ 11

   I.   DEFENDANT'S ANTI-SLAPP MOTION IS MOOT AND LACKS MERIT ................. 11

   II.  THE STATE LAW CLAIMS ARE NOT PREEMPTED BY FEDERAL PATENT LAW

   GRANTED ...................................................................................................... 17

   III. DEFENDANT'S CONDUCT IS NOT PROTECTED UNDER CALIFORNIA'S

   LITIGATION PRIVILEGE ................................................................................ 18

   IV. DEFENDANT'S CONDUCT IS NOT PROTECTED UNDER THE NOERR-

   PENNINGTON DOCTRINE ............................................................................. 20

   V.  THE FIRST AMENDED COMPLAINT DOES NOT LACK CRITICAL ELEMENTS

   AND SHOULD NOT BE DISMISSED UNDER 12(B)(6) ..................................... 21

   VI. DEFENDANT IS NOT ENTITLED TO RECOVER COSTS AND PLAINTIFF SHOULD

   BE AWARDED COSTS ..................................................................................... 23

CONCLUSION ......................................................................................................... 24

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE                    CASE NO. 2:24-cv-10694-MWC-JC
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Action Apt. Assn., Inc. v. City of Santa Monica*
  41 Cal. 4th 1232, 1251, 63 Cal. Rptr. 3d 398, 163 P.3d 89 (2007)) ........................................ 14

*Antonious v. Spalding & Evenflo Cos,*
  *275 F.3d 1066, 1072 (Fed. Cir. 2002)* ...................................................................... 16

*Eng'g, Inc. v. Robotic Vision Sys., Inc.,*
  *208 F.3d 981, 986 (Fed. Cir. 2000)* ......................................................................... 16

*FilmOn.com Inc. v. DoubleVerify Inc.,*
  7 Cal. 5th 133, 143-155 (2019) ................................................................................. 13

*JAMS, Inc. v. Superior Court,*
  1 Cal. App. 5th 984, 993-999 (2016)  358 (1991) ..................................................... 13

*Judin v. United States,*
  110 F.3d 780, 784 (Fed. Cir. 1997)........................................................................... 16

*Keezio Grp., LLC v. Summer Infant (USA), Inc.,*
  2022 U.S. Dist. LEXIS 185812 at *6-11 (C.D. Cal. Oct. 11, 2022)........................... 14, 15, 18

*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co.,*
  56 Cal. App. 5th 413, 270 Cal. Rptr. 3d 425 (2020)) ................................................ 14

*QPharma v. Andrew Jergens Co.,*
  360 F.3d 1295, 1304 (Fed. Cir. 2004)........................................................................ 16

*S. Bravo Sys., Inc. v. Containment Techs. Corp.,*
  96 F.3d 1372, 1375 (Fed. Cir. 1996)......................................................................... 16

*Thimes Sols. v. Tp Link United States Corp.,*
  Case No. CV 19-10374 PA (Ex), 2020 U.S. Dist. LEXIS 138591, at *16 (C.D. Cal. June 8, 2020) ........................................................................................................................ 19

*Thimes Sols., Inc. v. TP Link USA Corp.,*
  2022 U.S. App. LEXIS 10317 at *2. ........................................................................ 19, 20


**Statue**

28 U.S. Code § 1927 ........................................................................................................ 23

35 U.S.C. § 285 ............................................................................................................... 17


**Rules**

Cal. Civ. Proc. Code § 425.16. ................................................................................. 13, 14

Cal. Civ. Proc. Code § 425.16(a). .................................................................................. 12

Cal. Civ. Proc. Code § 425.17 ...................................................................................... 12

Cal. Civ. Proc. Code § 425.17(c) ............................................................................. 12, 14

Cal. Civ. Code § 47(b) ............................................................................................ 18

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE                    CASE NO. 2:24-cv-10694-MWC-JC
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

## PRELIMINARY MATTER

As a preliminary matter, it should be brought directly to the Court's attention that Plaintiffs had already agreed to file a Second Amended Complaint ("SAC") and provided Defendant with a draft of the SAC prior to Defendant's filing of its motion. See Declaration of David Silver ("DS Decl.") at ¶ 2. Plaintiffs are submitting the SAC along with this response. *Id*. at ¶ 3; Exhibit 1. As the Court will note, the SAC is already removing the state law causes of action that the entire Motion is based upon, thus making the motion moot. Defendant had full knowledge of the SAC and was completely unreasonable in its refusal to amicably resolve this dispute without the Court's intervention. DS Decl. at ¶ 4. Defendant's filing of the Motion is specifically intended to harass Plaintiffs and unnecessarily increase Plaintiffs' litigation costs despite Plaintiffs having already agreed to amend the operative pleading and remove the state law causes of action. *Id*. at ¶ 5. The parties in a case should work cooperatively to resolve disputes so as not to waste the Court's time with unnecessary motion. Defendant has completely and utterly failed in that regard by unreasonably filing the unnecessary Motion and wasting everyone's time, including that of the Court. Without waiving Plaintiffs' belief that the SAC makes the Motion moot, Plaintiffs respond as follows:

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE
AND/OR DISMISS THE FIRST AMENDED COMPLAINT                    CASE NO. 2:24-cv-10694-MWC-JC

## FACTUAL CORRECTIONS

First and foremost, Plaintiffs need to correct Defendant's counsel ("Mr. Samuel")'s multiple misrepresentations made in his declaration in support of the Motion. Defendant claims to have provided "a true and correct copy of the emails between [Plaintiffs' counsel] and myself." This is simply not accurate as Mr. Samuel cuts off multiple responses provided. DS Decl. at ¶ 6. Plaintiffs' are attaching hereto the full and complete correspondence history between Mr. Samuel and Plaintiffs' counsel. *Id*. Plaintiffs believe this was an intentional omission by Mr. Samuel in order to misrepresent to the Court that Mr. Samuel provided the last communication on the issue and Plaintiffs' counsel remained silent. Such a representation could not be further from the truth. Plaintiffs also do not believe it was a simple mistake or clerical error, as Mr. Samuel was well aware of Plaintiffs' subsequent responses and had ample time to amend the exhibit prior to filing, even if it had been created prior.

Moving on, Mr. Samuel states that he "invited [Plaintiffs' counsel] to attend a telephonic meet and confer to determine if some other compromise could be reached that would avoid the need for motion practice." Mr. Samuel's communication, as well as the Motion, indicate that there was no such "other compromise" to avoid such motion practice. Mr. Samuel clearly states that dropping the state law claims with prejudice was the *only* option he would even remotely

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE
AND/OR DISMISS THE FIRST AMENDED COMPLAINT                    CASE NO. 2:24-cv-10694-MWC-JC

entertain. *Id*. at ¶ 7. Plaintiffs' counsel offered *multiple* options to resolve the dispute, including agreeing to file the SAC and being willing to agree to additional stipulations to assuage Mr. Samuel's concerns. *Id*. at ¶ 8. Mr. Samuel adamantly refused every single attempt to amicably resolve this matter, continuously demanding the same remedy over and over again. *Id*. at ¶ 9. There are only two options: (1) Mr. Samuel only offered the meet and confer out of procedural necessity and had no intention of ever discussing "other compromises," or (2) Mr. Samuel did have an original intention to discuss "other compromises," making his position that withdrawal of the state law claims with prejudice was always a material and required condition a false statement. Either way, Mr. Samuel's declaration is inconsistent with his own prior communications.

Mr. Samuel states in his declaration that during the meet and confer teleconference, Plaintiffs' counsel agreed to prepare a stipulation for amending the First Amended Complaint to remove the state law causes of action. While true, Mr. Samuel conveniently leaves out that Plaintiffs' counsel also expressly disagreed with Defendant's legal position and that at no time during the call did Mr. Samuel identify that withdrawing the state law causes of action was a required demand as opposed to simply a "respectful request" as identified in Defendant's own letter. *Id*. at ¶ 10.

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE                    CASE NO. 2:24-cv-10694-MWC-JC
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

Mr. Samuel also states that he wrote a reminder email on May 5, 2025 about providing the stipulation, as if to imply that Plaintiffs' counsel was delaying in providing the requested documents. However, Mr. Samuel again conveniently leaves out that Plaintiffs' counsel informed Mr. Samuel during the call that Plaintiffs would be conducting an invalidity analysis and adding invalidity claims it discovers into the SAC. *Id.* at ¶ 11. Mr. Samuel also leaves out that he requested both the stipulation *and* draft SAC "next week" following the meet and confer teleconference, as even Mr. Samuel can acknowledge that an invalidity analysis will take time. *Id.* Mr. Samuel also neglects to mention that his "gentle reminder" email on May 5, 2025 was requesting *both* the stipulation *and* the draft SAC. *Id.* Plaintiffs' counsel complied by providing both in just about a week, which is a perfectly reasonable time frame and one that Mr. Samuel had no apparent issues with at the time. *Id.* at ¶ 12. Mr. Samuel's attempts to mislead the Court and imply any sort of dilatory conduct by Plaintiffs' counsel is not well taken.

Mr. Samuel provides completely inaccurate information by claiming that the draft stipulation originally provided by Plaintiffs' counsel "indicated that the dismissal of the claims was without prejudice." In truth, Plaintiffs' original draft was silent as to whether the state law claims were being withdrawn with or without prejudice. *Id.* at ¶ 13. It was Mr. Samuel's revisions that expressly included the

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE
AND/OR DISMISS THE FIRST AMENDED COMPLAINT                    CASE NO. 2:24-cv-10694-MWC-JC

designation of being with prejudice within the stipulation. *Id*. This whole dispute is one of Defendant's own making.

Mr. Samuel claims that Plaintiffs' counsel insisted a "desire to conduct discovery . . . that would support resurrecting state law claims." Unfortunately, Mr. Samuel does not appear to know the difference between what "would" support a claim and what "could" support a claim. Plaintiffs' counsel never claimed that Plaintiffs have an intention to resurrect the state law claims believing they will find additional supportive information, but merely that facts *could* exist that would allow such state law claims (without conceding that Defendant's position is correct to begin with). *Id*. at ¶ 14. Acknowledging that there could be facts is drastically different than affirmatively stating that facts would be found, as Defendant is attempting to misrepresent. Mr. Samuel's representation only seems to reinforce Plaintiffs' belief that Defendant certainly has something to hide in this regard.

Mr. Samuel states that he informed Plaintiffs' counsel that Plaintiffs' position ran counter to the letter and spirit of California's anti-SLAPP law, but fails to elaborate as to how. Mr. Samuel omits that Plaintiffs' counsel clearly identified the timeline with which an anti-SLAPP motion could be brought, how such a motion would be able to be brought against any future state law causes of action that would necessitate a new amended complaint, and that Plaintiffs would even stipulate to the timeliness of such a motion should the need even arise. *Id*. at ¶ 15. Mr. Samuel

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE AND/OR DISMISS THE FIRST AMENDED COMPLAINT                    CASE NO. 2:24-cv-10694-MWC-JC

had no counter-argument for any of these points, yet still unreasonably refused to amicably resolve this matter.

Mr. Samuel also states that he advised that any amendments to reassert the state law claims would be futile. However, he left out the part about how Plaintiffs' counsel disputed such a position. *Id*. at ¶ 16. Furthermore, it seems highly unlikely that Defendant's counsel can say with absolute certainty that there are no set of facts whatsoever that could be discovered that could possibly give rise to a state law claim. Besides, if no additional relevant facts are discovered, then Defendant would have nothing to worry about as there would not be any reason to reassert the state law claims. Defendant is merely attempting to prematurely block an entire category of claims prior to discovery being conducted, which Plaintiffs believe is likely being done to try to cover up substantial wrongdoing.

Lastly, Mr. Samuel affirmatively states that Defendant had no choice but to file the Motion. This is simply a false statement. Defendant had every opportunity to come to a reasonable and amicable resolution and deliberately refused to do so. The correspondence history between Mr. Samuel and Plaintiffs' counsel will speak for itself.

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

CASE NO. 2:24-cv-10694-MWC-JC

## BACKGROUND FACTS

With online stores such as Amazon comes unethical vendors, such as Defendant, who attempt to fraudulently obtain IP rights and then abuse the reporting systems of such online retailers for personal financial gain. In its Motion, Defendant identifies its patent as U.S. Patent No. 11,478,576, which is not remotely related to the products at issue and is not owned by Defendant. The patent at issue is U.S. Patent No. 12,103,576 ("the '576 Patent"). The fact that Defendant cannot even identify its own patent is concerning. The '576 Patent was issued on October 1, 2024. Defendant then essentially immediately started taking down as many products as it could find. Since December of 2024, there have been sixteen (16) declaratory judgment lawsuits filed against Defendant in various jurisdictions, all of which are relating to the '576 Patent. *Id*. at ¶ 17. While a couple have since terminated, the vast majority remain active. These are also only the stores that elected to bring declaratory judgment actions against Defendant, with the actual scope of Defendant's patent abuse likely being even more widespread. Notably, Defendant is not in the position of plaintiff in a single lawsuit relating to the '576 Patent since it was issued in October of 2024. *Id*. The only lawsuit Defendant is in the position of plaintiff in since the issuance of the '576 Patent has absolutely nothing to do with the '576 Patent. *Id*.

While the '576 Patent was issued on October 1, 2024, Defendant glaringly fails to identify the actual priority date for its claims within the '576 Patent. The '576 Patent is an attempt by Defendant to combine multiple products into a single patent to try to give the appearance of an earlier priority date than Defendant can rightfully claim. This becomes painfully clear when viewing Defendant's own website and the figures within the '576 Patent.

The '576 Patent is associated with the "Quik Box" product on Defendant's own website, but is not listed in association with the "Quik Cart Elite / Pro" products. *Id*. at ¶ 18. However, Figures 1-29 of the '576 Patent appear to display Defendant's "Quik Cart Pro" product. *Id*. at ¶ 19. Figures 30-43 appear to display Defendant's "Quik Box" product, but all of the elements were not included in the original application that displayed the "Quick Cart Pro" product in the first set of figures. *Id*. at ¶ 20. By attempting to introduce the new matter in Claim 11, Defendant was trying to combine substantially different products into a single patent. Unfortunately for Defendant, they can only rely on priority for when the elements were fully introduced, not for any element of the patent. Essentially, different claims will have different priority dates, a fact Defendant is trying to hide.

With the addition of new material for Claim 11 of the '576 Patent, under which Defendant's "Quik Box" product is described, the priority date for Claim 11 would be in 2023. There are multiple prior arts in 2022 and January of 2023 that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

would easily predate Defendant's "Quik Box" product and Claim 11 of the '576 Patent. *Id*. at ¶ 21. In fact, Plaintiff Dongguan Xianghuo Trading Co., Ltd. sells storage bins on Amazon.com under the storefront "XIANGHUO" using the ASIN B0CGZP8NMX, which was first available on or about February 10, 2021. *Id*. at ¶ 22. Plaintiff iBeauty Limited Company sells storage bins on Amazon.com under the storefront "IBEAUTY LIMITED COMPANY" using the ASIN B0B67PCFLQ, which was first available on or about August 24, 2022. *Id*. at ¶ 23. Plaintiff Dongguan Laiyang Trading Co., Ltd. sells storage bins on Amazon.com under the storefront "LYUSDD" using the ASIN B0BQ3H7PT8, which was first available on or about December 28, 2022. *Id*. at ¶ 24. Plaintiff Guangzhou Lincan Electronic Technology Co., Ltd. sells storage bins on Amazon.com under the storefront "jolyhome" also using the ASIN B0BQ3H7PT8. *Id*. at ¶ 25. Plaintiffs have multiple products that have been publicly displayed and available that are prior to any priority date Defendant can assert for Claim 11. This is why Defendant is desperately attempting to obscure its priority date for Claim 11, and why Defendant's quotation of the elements of the '576 Patent in its Motion only quotes a minimal portion of the elements within the '576 Patent when all elements of a patent claim must be present for infringement to be found. Defendant knows full and well that further identification of its claims would provide a clear path towards non-infringement and invalidity.

Defendant contends that it sent the takedown notices in anticipation of and preparation for litigation, just that Plaintiffs "beat them to the filing." However, such a filing would have blatantly violated Rule 11. Defendant simply sent takedowns to remove products from legitimate competitors. There were no attempts to purchase the products Defendant was removing. There was also no independent infringement analysis. Plaintiffs actually requested the infringement charts, after which Mr. Samuel created a single chart for a single product despite there being multiple plaintiffs and multiple products. *Id*. at ¶ 26. Defendant took absolutely no steps in actually preparing for any infringement litigation, and to date has still yet to file a single infringement lawsuit against anyone Defendant sent removals for. The fact that Defendant was not even willing to state that its takedowns were in anticipation of or preparation for litigation within a sworn declaration, either by Defendant or through Defendant's counsel, is very telling. Defendant's contentions that it was acting in anticipation of and preparation for litigation is nothing but a gigantic lie intended to avoid Plaintiffs' argument that such conduct is not in fact protected, an argument Plaintiffs' counsel had previously shared in attempting to amicably resolve this matter. Amazon also reinstated Plaintiffs' products on appeal, which Amazon almost never does without a Court order, further displaying Defendant's takedown requests were utterly without any merit whatsoever. *Id*. at ¶ 27.

Plaintiffs had already agreed to amend its pleading to remove the state law causes of action in the SAC, which was provided to Defendant prior to Defendant filing the present motion. Defendant's assertion that not withdrawing the state law claims with prejudice is a "tactic" by Plaintiffs is absurd. Defendant would still be able to bring an anti-SLAPP motion if state law causes of action were attempted to be added back into a future amended complaint, which Plaintiffs' would stipulate as to the timeliness of the filing and the Court can allow at any time under its discretion. Defendant provides no legal support that such a dismissal with prejudice for the state law causes of action is in any way required. There are no unnecessary legal costs on Defendant as the stipulation was to obviate the need for the Motion, which Defendant decided to unnecessarily file anyway. Defendant is increasing its own litigation costs by being completely unreasonable, for the sole purpose of attempting to bully and harass Plaintiffs and unnecessarily increase Plaintiffs' litigation costs. Defendant simply wants the Court to immunize Defendant from all possible claims for unfair business practices and tortious interference, which is an improper abuse of the special motion to strike.

## ARGUMENT

### I. Defendant's anti-SLAPP Motion is Moot and Lacks Merit

For starters, Defendant's Motion is moot for attempting to strike and/or dismiss the state law causes of action that Plaintiffs had already agreed to withdraw

upon filing the SAC prior to the Motion ever being filed. Defendant cites Cal. Civ. Proc. Code § 425.16(a) as its main basis for the Motion and requests fees as part of the Motion. However, the California Legislature created Cal. Civ. Proc. Code § 425.17 due to the disturbing abuse of Cal. Civ. Proc. Code § 425.16(a). Defendant's filing here is certainly abusive of Cal. Civ. Proc. Code § 425.16(a), especially considering that Plaintiffs had already agreed to file the SAC withdrawing the state law claims.

Under Cal. Civ. Proc. Code § 425.17(c), the protections of California's anti-SLAPP statute does not extend to certain commercial speech. Defendant is primarily engaged in selling its products, including on and its own website. The takedown notices Defendant sent to Amazon were direct representations of fact, namely, that Plaintiffs' products were infringing Defendant's patent. The takedown notices were directly about a business competitor's business operations and goods, namely that Plaintiffs' products were infringing products and Plaintiffs were violating Defendant's patent rights. The takedown notices were intended to secure Defendant more sales by removing legitimate competitors from Amazon's online marketplace. The intended audience of the takedown notices, namely Amazon, will influence actual or potential consumers by removing Plaintiffs' products. Therefore, the conduct is commercial speech that would not be protected by California's anti-SLAPP procedures.

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE AND/OR DISMISS THE FIRST AMENDED COMPLAINT                    CASE NO. 2:24-cv-10694-MWC-JC

The context of the speech matters for the application of California's anti-SLAPP statute, and commercial speech is no exception. *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 143-155 (2019); *JAMS, Inc. v. Superior Court*, 1 Cal. App. 5th 984, 993-999 (2016). The California Supreme Court in *FilmOn* and the Fourth District Court of Appeal in *JAMS* both denied an anti-SLAPP motion based on the speech provided not being protected. The situation we have here in Defendant's takedown notices is whether it is even related to a public issue at all. The takedown notices are private notices sent to Amazon that are then relayed privately to the store owner facing the allegations. The allegations are concerning alleged private rights in a patent. There does not appear to be a legitimate public issue, concern, or conversation that would be impacted by Defendant's submissions of its takedown notices. If the takedown notices represent a mere private dispute that the public would likely not care about at all, as the context appears to show, then Cal. Civ. Proc. Code § 425.16 is not applicable to begin with as there is no issue of public significance.

On the other hand, if Defendant contends that the takedown notices have some sort of public significance, then that necessitates that the communications are somehow reaching and influencing the public, which would then definitively put the takedown notices in the category of commercial speech that would be exempted

from Cal. Civ. Proc. Code § 425.16 under Cal. Civ. Proc. Code § 425.17(c). Either way, Defendant's anti-SLAPP motion cannot prevail.

Furthermore, Defendant's entire argument appears to rely on the fact the Court has granted similar motions for takedown notices to Amazon in the past, therefore the Court should do it again. However, this is not accurate. The Central District has directly denied an anti-SLAPP motion that was brought regarding the submission of a takedown notice sent to Amazon. *See Keezio Grp., LLC v. Summer Infant (USA), Inc.*, 2022 U.S. Dist. LEXIS 185812 at *6-11 (C.D. Cal. Oct. 11, 2022). In the *Keezio* case, Summer Infant had sent a takedown request, refused to reinstate the products, and found themselves as the defendant when Keezio brought a lawsuit against them. The Court determined that Summer Infant's takedown notice was *not* protected activity. *Id*. at *9.

"[P]relitigation communications are protected under the litigation privilege *only* if they relate to litigation *contemplated in good faith and under serious consideration*." *Id*. at *8 (quoting *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co.*, 56 Cal. App. 5th 413, 270 Cal. Rptr. 3d 425 (2020)) (emphasis added). "[G]ranting an anti-SLAPP motion would not be proper where there is 'a triable issue of fact whether . . . imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving the dispute between the parties.'" *Id*. at * 8-9 (citing *Action Apt. Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251, 63

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE                                    CASE NO. 2:24-cv-10694-MWC-JC
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

Cal. Rptr. 3d 398, 163 P.3d 89 (2007)). The Court in *Keezio* notes that nothing suggests Summer Infant sent any cease-and-desist letters, communicated any intention to enforce its rights, or took any steps towards litigation. *Id*. at * 9.

Here, Defendant has not referenced any cease-and-desist letters sent to any of the Plaintiffs, and Plaintiffs contend none were ever sent. Defendant also never communicated any intention to file any lawsuits or took any steps towards litigation. As explained above, Defendant has had *sixteen* (16) declaratory judgment lawsuits filed against it since December of 2024, in about the span of only five months, all relating to the '576 Patent. This is not even counting for sellers who have had their products removed and have not filed a declaratory judgment lawsuit in response. On the other hand, Defendant has not filed a single infringement lawsuit for the '576 Patent since it has been issued, despite Defendant's baseless and unsupported statements that such takedowns were "foundational steps" for litigation. Additionally, Defendant had no claim charts prepared for any of Plaintiffs' products until Plaintiff requested as such *after* initiating its own declaratory judgment lawsuit. Even now, Defendant has not provided, and Plaintiffs certainly believe Defendant does not have, claim charts for all of Plaintiffs' products.

In the patent infringement context, the Federal Circuit interprets Rule 11 "to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE AND/OR DISMISS THE FIRST AMENDED COMPLAINT                     CASE NO. 2:24-cv-10694-MWC-JC

infringement." *Antonious v. Spalding & Enflo Cos*., 275 F.3d 1066, 1072 (Fed. Cir. 2002); *see also QPharma v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004); *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997); S. *Bravo Sys., Inc. v. Containment Techs. Corp*., 96 F.3d 1372, 1375 (Fed. Cir. 1996). The policy underlying Rule 11's requirement for parties to engage in a reasonable pre-filing investigation – particularly in patent infringement cases – is rooted in common sense. Defending against baseless infringement claims subjects the accused infringer to undue costs. *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Performing a reasonable, pre-filing assessment of the basis of each claim asserted to be infringed is, therefore, extremely important. *Id*. Courts have found pre-suit investigations unreasonable when there was: (l) no attempt to obtain a sample of the infringing device and compare it to the patent claims; (2) no independent infringement analysis by counsel; and/or (3) no reverse engineering or attempt to acquire technical specifications from the alleged infringer. *Judin*, 110 F.3d at 784-85; *View Eng'g*, 208 F.3d at 985. Here, Defendant merely sent takedown notices without conducting any of the actual pre-filing analysis required to avoid sanctions under Rule 11. If Defendant contends Plaintiffs' merely beat it to the filing, then Defendant must have been considering filing a lawsuit that was in blatant violation of Rule 11's standards for utility patent infringement cases. The actual truth is that Defendant had no intention of filing a lawsuit, as it has yet

to do so despite having sixteen lawsuits filed against it. Therefore, Defendant's contention that sending the takedown notices to Amazon was a "foundational step in anticipation of litigation" is both unsupported and untrue, especially considering takedown notices are in no way required to file a lawsuit in the first place.

Defendant can claim the takedowns were in anticipation of litigation all it wants, but the facts speak for themselves. If Defendant had any intention of actually filing any lawsuits for the substantial amount of takedown requests it has apparently sent to Amazon, Defendant certainly would have properly conducted its pre-filing investigations and initiated such lawsuits by now. Defendant's takedowns cannot be considered protected speech if not conducted in *good faith* anticipation of litigation. Defendant has no such good faith here and cannot prevail.

## II.    The State Law Claims are Not Preempted by Federal Patent Law

Defendant's belief that the State Law claims are preempted by Federal Patent Law, but only cites to cases that reference preemption where the infringer is the plaintiff and is claiming both infringement of the patent and state law claims based upon the same allegations of infringement. Federal Patent Law provides for remedies for when infringement is found, but does not provide remedies for the harm done to alleged infringers when the alleged infringement was found to be fraudulent, baseless, and entirely without merit. While 35 U.S.C. § 285 can award attorney's fees to a prevailing party, it is only in cases that are deemed to be

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

CASE NO. 2:24-cv-10694-MWC-JC

"exceptional" and does not provide any recovery for wrongful harm done to an alleged infringer's business. For preemption to apply, the remedies sought must be of the kind that have been reserved by the federal statutes. There is no such reservation for alleged infringers recovering for unfair business practices or other state law claims within the federal patent statutes.

### III.    Defendant's Conduct is Not Protected Under California's Litigation Privilege

Cal. Civ. Code § 47(b) states that a publication is privileged if it is made in any legislative, judicial, or other official proceeding or in the initiation or course of any other proceeding authorized by law. As discussed above, California's litigation privilege extends to publications that are made when litigation is contemplated in good faith and in serious consideration of litigation. Defendant's takedown notices were not sent in good faith contemplation of litigation or in serious consideration of litigation. Defendant did not take any affirmative steps for any required pre-filing investigation, did not send any cease-and-desist letters claiming Defendant will enforce its rights, and has still yet to file a single affirmative action for infringement as the plaintiff for the '576 Patent.

Defendant claims that takedown notices to Amazon are *per se* immunized from relief, but the Court in the *Keezio* case would certainly disagree with that bold stance, considering they expressly found a takedown notice to Amazon *not* to be protected. Additionally, the Court in *Keezio* specifically distinguishes the *Beyond*

*Blond* case Defendant attempts to rely on in making its bold "per se" immunization. In another twist, Defendant cites *Thimes Sols. v. Tp Link United States Corp.*, Case No. CV 19-10374 PA (Ex), 2020 U.S. Dist. LEXIS 138591, at \*16 (C.D. Cal. June 8, 2020) and claims it was reversed in part on other grounds to support their argument that Amazon takedown notices constitute protected prelitigation communications. However, this is a misstatement of the law. In truth, the Ninth Circuit *overruled* the district court and held that the district court erred in granting the anti-SLAPP motion because the Amazon takedown notices were not sent in serious contemplation of litigation. *Thimes Sols., Inc. v. TP Link USA Corp.*, 2022 U.S. App. LEXIS 10317 at \*2. The Ninth Circuit affirmed the dismissal of claims under the Lanham Act and the Sherman Antitrust Act, but this case does not propose either claims under either of those acts. *Id*. at \*3. The Ninth Circuit also affirmed, as will be discussed below that the *Noer-Pennington* doctrine does not apply. *Id*. at \*3-4.

Defendant wants the Court to believe that litigation was "looming" and that Plaintiffs merely beat Defendant to the filing. But apparently the plaintiffs in all 16 of the declaratory judgments "beat Defendant to the filing." Defendant has apparently not won that "race" a single time and despite the "looming" litigation, has not filed an affirmative infringement lawsuit as the plaintiff against a single

seller to date. Defendant's statements are untrue and the takedown notices are not protected under California's litigation privilege.

## IV. Defendant's Conduct is Not Protected Under the *Noerr-Pennington* Doctrine

The Ninth Circuit has clearly determined that the *Noerr-Pennington* doctrine does *not* apply to Amazon takedown notices. *Thimes Sols., Inc. v. TP Link USA Corp.*, 2022 U.S. App. LEXIS 10317 at *3-4. The Ninth Circuit has acknowledged that the *Noerr-Pennington* doctrine was extended to prelitigation settlement demands and cease-and-desist letters. *Id*. at *4. However, Defendant sent neither settlement demands nor cease-and desist letters in this current matter. Defendant relies solely on their takedown notices to Amazon. On this direct point, the Ninth Circuit unambiguously states "we have *never* applied, and we see *no justification to apply*, the doctrine to the communications sent here, which were delivered solely to a third party and which did not propose or threaten litigation." *Id*. (emphasis added). None of Defendant's cited cases are more recent than the *Thimes* decision by the Ninth Circuit in 2022 and none are of a higher authority than the Ninth Circuit. Therefore, the Ninth Circuit has definitely stated that the *Noerr-Pennington* doctrine does not apply in the circumstances we are faced with here and Defendant's Amazon takedown notices are not protected activity.

## V.    The First Amended Complaint does Not Lack Critical Elements and should Not be Dismissed Under 12(b)(6)

Plaintiffs contend that the First Amended Complaint does not lack critical elements as it plainly states a theory of recovery that adequately puts Defendant on notice for the relief sought. Additionally, within this response and within the SAC attached hereto, Plaintiffs have alleged multiple highly concerning facts relating to Defendant's lack of asserted rights and fraudulent conduct in seeking the issuance of the '576 Patent and immediately sending widespread takedowns in what appears to be reckless abandon. Plaintiffs have clearly alleged that multiple of their own products clearly predate Defendant's alleged priority date, which is the same priority date Defendant has desperately attempted to conceal.

Defendant attempts to argue that submitting challenges through Amazon's internal process cannot ever be immoral, unethical, oppressive, unscrupulous, or injurious acts that outweigh the benefits and that if they were, every complaint to Amazon would give rise to a California state law unfair competition claim. There are numerous plaintiffs in fifteen other declaratory judgment lawsuits against Defendant that are sure to disagree. Widespread and knowingly meritless takedown requests solely intended to remove legitimate competition is certainly actionable. This does not prevent takedown requests that have merit, so not every complaint would give rise to unfair competition claims as Defendant suggests. However, taking Defendant's position, any challenge submitted to Amazon would be immune

21

to state law claims regardless of the validity of the challenge. For example, if a party submitted a challenge to Amazon based on a known expired patent, or using a patent that did not actually belong to them, that conduct would still be immune from state law claims according to Defendant. Plaintiffs could submit a patent infringement takedown request to Amazon claiming infringement of the '576 Patent against Defendant's own products, and such conduct would apparently still be protected according to Defendant's position. This also does not protect the public interest by allowing a party to attempt to wrongfully and fraudulently remove legitimate competition based on meritless complaints in order to manipulate the marketplace. Defendant's position is misguided, as challenges submitted to Amazon are not *per se* protected and can certainly be immoral, unethical, oppressive, unscrupulous, or injurious acts.

Even if the Court believes the state law causes of action to be deficient in the First Amended Complaint, there are additional facts that can easily be alleged and still more information to be discovered that could potentially provide even further foundation for such claims. However, Plaintiffs agreed to file the SAC in an effort to avoid such needless motion practice, and will abide by their agreement and file the SAC, but do so without prejudice to the state law claims should even more information come to light in discovery. Especially considering Defendant's takedown notices are not considered to be protected conduct, Plaintiffs believe a

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE
AND/OR DISMISS THE FIRST AMENDED COMPLAINT                    CASE NO. 2:24-cv-10694-MWC-JC

withdrawal without prejudice to be a fair trade with Defendant covering Plaintiffs cost for having to needlessly oppose this baseless motion.

## VI.    Defendant is Not Entitled to Recover Costs and Plaintiff should be Awarded Costs

As discussed above, Defendant's takedown notices are not protected activity and Defendant cannot prevail on its anti-SLAPP motion. Therefore, Defendant should not be awarded any costs. Defendant should also not be awarded costs for filing a motion that is easily mooted by the filing of the SAC, which Plaintiffs had already agreed to file and have provided in conjunction with this response to Defendant's Motion.

On the other hand, Plaintiffs contend they should be awarded fees under 28 U.S. Code § 1927 for Defendant's filing of this Motion despite knowing Plaintiffs were going to be filing a SAC. By filing this unnecessary motion, Defendant has multiplied the proceedings unreasonably and vexatiously and should be required to satisfy the costs reasonably incurred by Plaintiffs in having to respond. Plaintiffs contend the Court could instead award Plaintiffs' fees for having to respond to this Motion using the Court's discretion under L.R. 11-9 and L.R. 83-7.

Alternatively, Plaintiffs' seek a Court order scheduling an additional briefing for Rule 11 sanctions against Defendant for the filing of this Motion, which was brought for the sole purpose of harassing Plaintiffs and causing unnecessary delay.

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE                    CASE NO. 2:24-cv-10694-MWC-JC
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

## CONCLUSION

Defendant's motion is moot to begin with as a result of Plaintiffs' willingness to file the SAC, which Defendant new about prior to filing this motion. Defendant only filed this motion to harass and bully Plaintiffs into withdrawing the state law causes of action with prejudice, which is not required. Defendant's Amazon takedown notices are not a proper subject of California's anti-SLAPP motion, are not protected activity under California's litigation privilege, are not subject to the *Noerr-Pennington* doctrine, and are not preempted by federal law. Plaintiffs' request Defendant's Motion either be mooted or denied outright, with either result allowing Plaintiffs to recover its fees for having to needlessly oppose an unnecessary motion.

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE          CASE NO. 2:24-cv-10694-MWC-JC
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

DATED: May 16, 2025          Respectfully submitted,

/s/ *David Silver*
David Silver (CA Bar No. 312445)
**BAYRAMOGLU LAW OFFICES, LLC**
1540 West Warm Springs Road, Suite 100
Henderson, Nevada 89014
T: (702) 462-5973
F: (702) 553-3404
david@bayramoglu-legal.com

*Attorneys for Plaintiff*

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE                    CASE NO. 2:24-cv-10694-MWC-JC
AND/OR DISMISS THE FIRST AMENDED COMPLAINT

## __CERTIFICATE OF SERVICE__

I, David Silver, hereby certify that on May 16, 2025, I electronically filed the foregoing with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.

/s/ David Silver
David Silver (CA Bar No. 312445)
**BAYRAMOGLU LAW OFFICES, LLC**

PLAINTIFFS' RESPONSE TO MOTION TO STRIKE
AND/OR DISMISS THE FIRST AMENDED COMPLAINT                    CASE NO. 2:24-cv-10694-MWC-JC